**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JONISA BOMBARD-SENECAL,**

                      Plaintiff,                      8:13-cv-649
                                                                        (GLS)
          v.

**COMMISSIONER OF SOCIAL
SECURITY,**

                      Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Erwin, McCane Law Firm | THOMAS C. ERWIN, ESQ. |
| 23 Elk Street | |
| Albany, NY 12207 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | SIXTINA FERNANDEZ |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Jonisa Bombard-Senecal challenges the Commissioner of Social Security's denial of her claim for a period of disability and Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Bombard-Senecal's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On June 9, 2011, Bombard-Senecal filed an application for DIB under the Social Security Act ("the Act"), alleging disability since November 5, 2009. (Tr.[1] at 106, 178-84.) After her application was denied, (*id.* at 122-33), Bombard-Senecal requested a hearing before an Administrative Law Judge (ALJ), which was held on September 13, 2012, (*id.* at 69-98, 134-35). On November 13, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-6, 27-54.)

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 8.)

Bombard-Senecal commenced the present action by filing her complaint on June 7, 2013 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 10, 11.)

### III. Contentions

Bombard-Senecal contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 10 at 11-12.) Specifically, Bombard-Senecal claims that the ALJ erred in assessing her residual functional capacity (RFC), "rendering the finding of 'not disabled' at step five in the sequential analysis without support in the record." (*Id.* at 11.) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 11 at 6-11.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 10 at 5-10; Dkt. No. 11 at 1.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. **Discussion**

### A. **RFC Determination**

In her only argument, which is devoid of any citation to legal authority or the administrative record, Bombard-Senecal asserts that the ALJ committed reversible error by finding that she retains the RFC to perform the full range of unskilled light work that is simple, rote, and involves only occasional interaction with others, frequent crawling, balancing, stooping, crouching, and climbing ladders, and does not require climbing scaffolds. (Dkt. No. 10 at 11-12; Tr. at 36.) According to Bombard-Senecal, the ALJ failed to consider all of the symptoms, documented by the medical evidence of record, of her seizure disorder, migraines, bipolar disorder, anxiety, depression, and panic disorder. (Dkt. No. 10 at 11-12.) Further,

Bombard-Senecal claims that the ALJ erred in relying on the Medical-Vocational Guidelines to make his step five determination because her nonexertional limitations erode the occupational base of work at the light exertional level. (*Id.* at 12.) The court disagrees.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[2] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

In this case, the ALJ's RFC determination is supported by substantial evidence. The ALJ thoroughly discussed the evidence of record, including the medical opinions he relied on. (Tr. at 36-43.) Bombard-Senecal testified that she was treated for her various physical impairments by neurologists Massoud Azar and Ellen Gaughan, gynecologist Dane

---

[2] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

Larsen,[3] and nurse practitioner Travis Sawyer. (*Id.* at 78-81, 500, 634-39, 684-85, 787-93, 979-81, 1063-74, 1132-39, 1165-81, 1182-84.) Her mental impairments were treated by social worker Alyson Curry[4] and nurse practitioner Sawyer. (*Id.* at 82-83.) The ALJ obtained medical source statements regarding Bombard-Senecal's ability to perform the physical and mental functions of work from Drs. Azar and Larsen, as well as Sawyer and Curry. (*Id.* at 634-39, 1063-74, 1165-81.)

Dr. Azar completed several such statements, and consistently opined that Bombard-Senecal was capable of performing the functional demands of light work.[5] (*Id.* at 634-39, 1064-74, 1165-68.) The ALJ afforded Dr. Azar "significant weight," and, indeed, his RFC determination reflects the minimal limitations adduced by Dr. Azar. (*Id.* at 36, 42.) In October 2012, nurse practitioner Sawyer opined that Bombard-Senecal can occasionally

---

[3] The ALJ's decision mistakenly refers to Dr. Larson as Dr. "Diane" Larson. (Tr. at 33.)

[4] Some medical records refer to Curry as Alyson Bever. (Tr. at 787-93.) Bombard-Senecal testified that Curry's name changed after she was married. (*Id.* at 83.)

[5] Light work requires lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds. *See* 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* In his most recent medical source statement, Dr. Azar opined that Bombard-Senecal can lift and carry up to fifty pounds occasionally and twenty pounds frequently, sit, stand, and walk for eight hours each in a workday, and continuously climb stairs and ramps, balance, stoop, kneel, and crouch. (Tr. at 1165-68.) Dr. Azar further opined that Bombard-Senecal can frequently crawl and climb ladders, but not scaffolds. (*Id.* at 1167.)

lift and carry fifty pounds, frequently lift and carry twenty pounds, sit, stand, and walk for up to eight hours each in an eight-hour workday, frequently use her hands and feet, operate a vehicle, and maintain a household. (*Id.* at 1172-78.) The ALJ gave this opinion, which clearly supports his RFC determination, "some weight." (*Id.* at 42-43.)

In addition, although he did not explicitly weigh the medical source statement which Dr. Larson returned stating "we have not taken [Bombard-Senecal] out of work," the ALJ afforded "great weight" to the opinions of Dr. Larson contained in his treatment notes. (*Id.* at 33, 1063.) In particular, treatment notes from Dr. Larsen's office indicate that Bombard-Senecal's complaints of abdominal and pelvic pain were not likely caused by a gynecological issue because her symptoms were mild and atypical for endometriosis, and, instead, Dr. Larson thought she should follow up with a gastroenterologist. (*Id.* at 428-30, 684-85, 725, 979-80.) In March 2011, Dr. Larsen noted that he was "unclear" as to what Bombard-Senecal was "striving to achieve. On the one hand, she has vague pelvic pain, but denies specific aspects of pelvic pain . . . . On the other hand, she does have some abdominal pain, but does not seem to follow the regimen or recommendations of the gastroenterologist . . . ." (*Id.* at 988.)

Turning to Bombard-Senecal's mental impairments, social worker Curry opined that Bombard-Senecal suffered only "a slight limitation" in her ability to understand, remember, and carry out simple instructions, and no limitation in her ability to make judgments on simple work-related decisions. (*Id.* at 1169-71.) Further, although Bombard-Senecal suffered more than a slight limitation in her ability to interact with the general public and co-workers, she was still able to function satisfactorily in these areas. (*Id.* at 1169-70.) However, according to Curry, Bombard-Senecal suffered a marked limitation in her ability to interact appropriately with supervisors, and experienced extreme lethargy as a result of her medications. (*Id.* at 1170.) The ALJ gave this opinion "some weight" in assessing Bombard-Senecal's RFC. (*Id.* at 39.) Nurse Practitioner Sawyer, who prescribed Bombard-Senecal medications to treat her bipolar disorder and anxiety disorder, opined that she suffered only "a slight limitation" in her ability to understand, remember, and carry out simple and complex instructions, and make judgments on simple and complex work-related decisions. (*Id.* at 1179-81.) Further, Bombard-Senecal suffered "moderate" limitations, but was still able to function satisfactorily in the areas of interacting with the public, supervisors, and co-workers, and responding appropriately to usual

work situations and changes in a routine work setting. (*Id.* at 1180.) The ALJ also gave "some weight" to this opinion. (*Id.* at 40.)

In addition to weighing the opinions of these treating sources,[6] the ALJ also relied on the opinion of non-examining psychological consultant R. Petro that, although Bombard-Senecal was moderately limited in her ability to complete a normal workday and workweek and perform at a consistent pace, get along with co-workers without distracting them, and set realistic goals or make plans independently, she was "able to complete tasks, make work decisions, respond appropriately to supervision, co[-]workers[,] and work situations, and deal with changes in a routine work setting." (*Id.* at 39, 1075-77.) The ALJ also properly considered Bombard-Senecal's testimony and concluded that she was only partially credible. (*Id.* at 37, 43); *see* 20 C.F.R. § 404.1529. In making this determination, the ALJ considered Bombard-Senecal's sporadic record of mental health treatment, limited treatment with a neurologist, completion of two-years of an online college program and current enrollment in a real estate program, inconsistent statements regarding alcohol consumption, and collection of

---

[6] The court notes that, because social worker Curry and nurse practitioner Sawyer are not "acceptable medical sources" their opinions are not entitled to controlling weight. *See* SSR 06-03p, 71 Fed. Reg. 45,593, 45,594 (Aug. 9, 2006); *see* 20 C.F.R. § 404.1513(a), (d)(1).

unemployment benefits for all four quarters of 2011, certifying that she was ready, willing, and able to work. (Tr. at 43, 74, 188, 755, 757, 763, 1049, 1079, 1138); *see Jackson v. Astrue*, No. 1:05-CV-01061, 2009 WL 3764221, at *8 (N.D.N.Y. Nov. 10, 2009) (holding that, although a claimant's filing for and receipt of unemployment benefits while claiming to be disabled is not proof-positive that claimant was not disabled, the ALJ can properly consider claimant's claim for unemployment benefits when assessing her credibility). Based on the foregoing, the court is satisfied that the ALJ properly considered all of the evidence available to him in assessing Bombard-Senecal's RFC, and his determination is supported by substantial evidence.

Turning to the ALJ's use of his RFC determination at step five, an ALJ may rely on the Medical-Vocational Guidelines, commonly referred to as "the grids," found in 20 C.F.R. pt. 404, subpt. P, app. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines. *See* 20 C.F.R. § 404.1569; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009). Here, because the ALJ determined that Bombard-Senecal can perform the full range of unskilled light work that requires only occasional interaction

with others and no climbing of scaffolds, his reliance on the Medical-Vocational guidelines was appropriate. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.21 (directing a finding of "not disabled" for younger individuals capable of performing light work that have at least a high school education and can speak English); *see also id.* § 202.00(g) ("[T]he primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) . . . . The capability for light work, which includes the ability to do sedentary work, represents the capability for substantial numbers of such jobs."). Exclusive reliance on the grids will only be deemed inappropriate where, unlike the case at hand, the nonexertional impairments *"significantly* limit the range of work permitted by [the claimant's] exertional limitations." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (emphasis added) (internal quotation marks and citation omitted).

### B. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

### VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

11

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Bombard-Senecal's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 31, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court